IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED MAR 13 2012
WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____ Deputy Clerk

| | |
|---|---|
| DEBORAH ALBERTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-384-FHS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Deborah Albertson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 3, 1957 and was 50 years old at the time of the ALJ's first decision. Claimant completed her high school education. Claimant has worked in the past as a nurse's aide, wiper, riveting machine operator, material handler, and hand

3

packer. Claimant alleges an inability to work beginning January 1, 2003 due to limitations resulting from pain in her back, hands, and feet, asthma, hypothyroidism, obesity, bipolar disorder, and attention deficit disorder.

## Procedural History

On September 7, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. After the ALJ issued an unfavorable decision which the Appeals Council declined to review, this Court reversed the ALJ's decision on July 14, 2009 and remanded the case for further proceedings. The Appeals Council reversed the ALJ's decision and the matter was remanded.

A second administrative hearing was conducted before ALJ Lantz McClain on January 4, 2010. On June 23, 2010, the ALJ issued a second unfavorable decision on Claimant's applications. Claimant did not appeal to the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential

4

evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a riveting machine operator.

**Errors Alleged for Revi98ew**

Claimant asserts the ALJ committed error in: (1) failing to consider all of her severe impairments; (2) reached an improper RFC based upon the evidence; and (3) finding Claimant can perform her past relevant work.

**Claimant's Impairments**

In his decision, the ALJ determined Claimant suffered from the severe impairments of hypothyroidism, asthma, possible right heel spur, obesity, depression, anxiety, and borderline intellectual functioning. (Tr. 266). He concluded Claimant retained the RFC to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8 hour workday, sit for at least 6 hours in an 8 hour workday - all with normal breaks, avoid concentrated exposure to such things as dust or fumes, and limited to simple, repetitive tasks, having no more than incidental contact with the public. These restrictions limited Claimant to light work. (Tr. 269). After consultation with a vocational expert, the ALJ determined Claimant could perform

5

her past relevant work as a riveting machine operator, which is classified as light work. (Tr. 272).

Claimant contends the ALJ failed to consider her diagnosed personality disorder as a severe impairment. Dr. Robert Spray evaluated Claimant's mental condition in a consultative evaluation conducted on September 10, 2007. Dr. Spray found Claimant's orientation, memory and concentration, fund of information, abstract reasoning, and judgment were appropriate. (Tr. 197-98). Dr. Spray estimated Claimant's IQ to be low average. (Tr. 198). Dr. Spray found possible exaggeration in the Beck Depression Inventory-II. (Tr. 199). The Personality Assessment Inventory performed by Claimant "produced a grossly exaggerated, invalid PAI profile." Nevertheless, Dr. Spray diagnosed Claimant with Bipolar Disorder, NOS, by medical records, with psychotic features, Anxiety Disorder, NOS (with possible PTSD issues), and Personality Disorder, NOS, with schizotypal, avoidant, and borderline features. Id.

Dr. Spray completed a form entitled Residual Functional Capacity Secondary to Mental Impairments, including Pain, Fatigue, and Hysterical Paralysis. He found severe restrictions in Claimant's ability to relate to co-workers, interact with supervisors, deal with work stresses, maintain regular attendance,

work in coordination or proximity to others without being distracted by them, complete a normal workday, complete a normal workweek, demonstrate reliability, behave in an emotionally stable manner, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 200-201).

Dr. Spray authored a letter dated February 8, 2008 concerning Claimant's condition. He states in a "to whom it may concern" correspondence that his conclusions were not influenced by the fact Claimant was referred by counsel and were not based upon certain testing, which he considered to be invalid. Rather, he states, his conclusions were based upon the "interview/mental status" and "drawn from the interview and medical history." (Tr. 237).

On July 14, 2009, this Court reversed the ALJ's decision and remanded the case for a re-evaluation of Dr. Spray's opinions. Specifically, the ALJ was directed to provide a discussion of the weight the ALJ gave to Dr. Spray's opinions and to consider whether his findings of a personality disorder should be a severe impairment. This Court also instructed the ALJ to re-assess Claimant's RFC in light of the reconsideration of Dr. Spray's opinions and to provide a proper analysis under step four of the demands of Claimant's past relevant work as a riveter. (Tr. 274-84).

On remand, Claimant underwent a psychological assessment by Dr. Denise LaGrand on February 12, 2010. Dr. LaGrand found Claimant's thoughts to be organized, logical, and goal-directed, noting Claimant could stay focused on the exam. Claimant's overall cognitive functioning was in the Borderline Intellectual Functioning range. Her full scale IQ score under the Wechsler Adult Intelligence Scale - 4th Edition was 75. (Tr. 378). Dr. LaGrand also found the results of the MMPI were invalid due to over-endorsement of symptoms leading to elevations in all clinical scales. (Tr. 379). Her final diagnosis was Major Depressive Disorder, moderate, Generalized Anxiety Disorder, and Borderline Intellectual Functioning. Her GAF was measured as 45. (Tr. 380).

Dr. LaGrand also completed a Mental Source Statement of Ability to Do Work-Related Activities (Mental) on Claimant dated February 22, 2010. Dr. LaGrand found Claimant to be markedly limited in the areas of the ability to make judgments on simple work-related decisions, the ability to carry out complex instructions and the ability to make judgments on complex work-related decisions. Claimant was determined to be moderately limited in the areas of understanding and remembering simple instructions, carrying out simple instructions, understanding and remembering complex instructions, interacting appropriately with the public, supervisors and co-workers, and the ability to respond

8

appropriately to usual work situations and to changes in a routine work setting. (Tr. 383-84). Dr. LaGrand noted that stress and anxiety interfered with Claimant's functioning. (Tr. 384).

In his second decision after remand, the ALJ found that Dr. Spray's and Dr. LaGrand's opinions should be afforded equal weight, noting that both gave Claimant moderate limitations in mental functioning. (Tr. 272). The ALJ also noted that virtually all of the formal testing was found to be invalid by both doctors due to over-reporting by Claimant. Id. He then stated that both doctors' reports supported a limitation upon Claimant to simple, repetitive tasks having no more than incidental contact with the public. Id.

Clearly, both doctors were concerned with Claimant's exaggeration of the testing, including the personality disorder testing performed by Dr. Spray. Additionally, the ALJ properly re-evaluated and explained the weight he gave to Dr. Spray's opinion as directed by this Court. Given both of these facts, this Court cannot find the ALJ's consideration but failure to include Claimant's personality disorder as a severe impairment to be error. The fact a condition has been diagnosed does not translate into a disability. See, Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). Any limitation that might be attributable to the personality disorder diagnosed by Dr. Spray appears to have been addressed in regard to

9

other severe impairments. As a result, reversal is not warranted on this basis.

## RFC Determination

Claimant next contends the ALJ's RFC assessment failed to include all of her limitations found by Dr. Spray and Dr. LaGrand. The ALJ determined that Dr. Spray's and Dr. LaGrand's opinions were entitled to equal weight and that "[b]oth gave the claimant moderate limitations in mental functioning." (Tr. 272). In fact, Dr. Spray found Claimant's limitations were "severe" in 13 areas referenced in the RFC mental assessment form. "Severe" limitation is defined in the form as "[s]ignificantly more than serious limitation with very little sporadic or intermittent remaining ability to function." (Tr. 200). Areas included with this limitation are relating to co-workers, interacting with supervisors, dealing with work stresses, maintaining regular attendance, working in coordination or proximity to others without being distracted by them, making simple work-related decisions, completing a normal workday (without interruptions from psychologically-based or pain-related symptoms), completing a normal workweek (without interruptions from psychologically-based or pain-related symptoms), performing at a consistent pace, demonstrating reliability, behaving in an emotionally stable

manner, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. Claimant was also found to be "marked" limited in 9 additional areas. (Tr. 200-01). The ALJ's limitations upon Claimant's RFC to "simple, repetitive tasks having no more than incidental contact with the public" does not accommodate these severe restrictions as the ALJ asserts. In particular, the ALJ did not consider the restrictions in associating with supervisors and co-workers that Dr. Spray's assessment describes. While this Court is sympathetic to the difficulties brought about by the different forms utilized by Dr. Spray and Dr. LaGrand, the ALJ must address the restrictions clearly contained in Dr. Spray's opinion since both evaluators' opinions were given equal weight and consideration.

### Step Four Evaluation

Claimant also asserts that she cannot return to her past relevant work and that the ALJ's evaluation was incomplete. The evaluation at step four has been determined to be comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC. In the second phase, an ALJ must determine the physical and mental demands of a claimant's past relevant work. In the third and final phase, the ALJ determines

11

whether the claimant has the ability to meet the job demands found in phase two despite the mental and physical limitations found in phase one. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(citations omitted). This Court has determined that the ALJ did not specifically include all of the limitations in Claimant's mental RFC. In the second phase, the ALJ properly ascertained the demands of Claimant's past relevant work through the testimony of both Claimant and the vocational expert. (Tr. 407-12). The third phase is necessarily suspect because of the failings in the first phase. On remand, the ALJ shall re-evaluate his step four findings in light of this decision.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will

12

preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE